NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MINDY ANASTASIA, | x | Hon. Stanley R. Chesler, U.S.D.J. |
| Plaintiff, | x | Civ. No. 03-5548 (SRC) |
| v. | x | **OPINION** |
| NEW JERSEY DIVISION of YOUTH & FAMILY SERVICES, et al. | x | |
| Defendants. | x | |

<u>Stanley R. Chesler, U.S.D.J.</u>

This matter comes before the Court on Defendant New Jersey Division of Youth and Family Services' Motion for Summary Judgment (docket item # 32), Defendant Monmouth County's Motion for Summary Judgment (docket item # 33) and Plaintiff Anastasia's Motion to Amend the Complaint (docket item # 35). The Court, having considered the papers submitted by the parties, for the reasons set forth below and for good cause shown, grants Defendant New Jersey Division of Youth and Family Services' Motion, grants Defendant Monmouth County's Motion and denies Plaintiff Anastasia's Motion.

**I. BACKGROUND**

Plaintiff's long history with Defendant DYFS began in 1991. The Court will not recite the entire history as presented by the parties in their various papers, but will mention those facts

important to the case and instant motions.[1] Plaintiff's parental rights were terminated as to four of her five children prior to 1999. Sometime around December 1999, DYFS received information that Plaintiff was pregnant and sought to confirm whether in fact she had another child. Although DYFS was unable to make a determination at that time, Plaintiff's Complaint reveals that she did indeed have her sixth child on January 7, 2000.

On or about January 13, 2000, DYFS received a referral from the Woman's Hospital in Greensboro, North Carolina, regarding Plaintiff's newborn and confirming that a baby was born on January 7, 2000, to a "Mindy Durando." (Def.'s Br., Ex. C)  The referral was made after two home visits to Plaintiff's address in North Carolina indicated Plaintiff was no longer residing at the address on record with the North Carolina hospital where Plaintiff had her baby. DYFS did not know where to find Plaintiff's newborn, and therefore, arranged to confront Plaintiff at a birthday party for one of her other children already in DYFS custody. State v. Anastasia, 356 N.J. Super. 534, 537 (App. Div. 2003). On that day, February 25, 2000, two DYFS employees and several local police officers confronted Plaintiff and sought to determine the newborn's location. Id. Plaintiff denied the existence of the infant. Id.

At some point during the confrontation, Plaintiff was given a two-page form entitled "Notice of Emergency Removal Pursuant to N.J.S.A. 9:6-8.29 and 9:6-8.30 without Court

---

[1] Only Defendant Monmouth County provided the Court with the required Local Rule 56.1 Statement, setting forth "material facts as to which there ... does not exist a genuine issue." L. Civ. R. 56.1. Yet, the Court was disappointed that this Defendant chose not to file reply papers nor a response to Plaintiff's cross-motion. Defendant DYFS included a "Statement of Facts and Procedural History" in its moving papers, although it is unclear which facts are in dispute. Similarly, Plaintiff's responsive papers include only a "Statement of Facts" and neither distinguishes whether facts are in dispute nor responds to either Defendants' recitation of the case. The Court does appreciate the citations to the record by all parties. To garner which facts are undisputed, the Court's background section here will be based upon these submissions, as well as the original Complaint and two related state court opinions. The Court directs the parties to consult and comply with the local rules in the future.

Order." Id. The notice provided that Plaintiff's newborn was removed from her home by DYFS and that she should appear in Court three days later for a hearing. Id. at 537-38. This letter, referred to as a DODD letter, was later the subject of a criminal matter heard in New Jersey Superior Court, which will be discussed more below.

Although the DODD letter indicated the newborn had already been removed, DYFS did not yet know where to find the baby. Therefore, DYFS caseworkers sought to compel Plaintiff to reveal the whereabouts of the newborn. Id. at 538. Plaintiff refused to disclose his location and subsequently she was arrested and taken to police headquarters. Id. The infant was later found at the home of a child care provider who notified police when Plaintiff failed to pick up the child because she was in jail. Id.

Two resulting state court matters involving Plaintiff Anastasia are at the heart of the instant case. First, Plaintiff was brought on criminal charges in state court for violating N.J.S.A. 2C:13-4. This statute essentially makes it a crime to conceal a child after being served with process. Plaintiff was found guilty by a jury, however, the Appellate Division overturned the conviction. The Appellate Division determined, among other meritorious issues raised on appeal, that the DODD letter was not "process" under the statute. Id. at 539. As such, the State failed to prove an essential element of the crime. Id. at 541.

The other state court matter related to the instant litigation is the termination of Plaintiff's parental rights of her sixth child, the newborn referenced above ("AKD"). The matter was tried over six days in state court with testimony from numerous witnesses before Judge Robert A. Coogan. In re Guardianship of A.K.D., A-5652-01T4, at 3-4 (N.J. Super. Ct. App. Div. Jan. 28, 2003). Plaintiff appeared at the commencement of the proceedings on January 9, 2002, but when

3

she failed to appear later that same day or on the next day of hearings, January 16, 2002, DYFS moved for default. Id. at 3. The Judge entered default and the trial proceeded in Plaintiff's absence. Id. at 4. The resulting decision of Judge Coogan terminated Plaintiff's parental rights of AKD. An appeal followed, and the Appellate Division affirmed.

On appeal, Plaintiff argued that the default was improper, that DYFS used the services it provided to her "inversely," and that DYFS failed to establish the statutory factors for termination of parental rights by clear and convincing evidence. Id. In an unpublished decision filed on or about January 23, 2003, the Appellate Division concluded that Plaintiff's arguments were without merit and affirmed the trial court's decision to terminate Plaintiff's parental rights. Id. In addition to affirming the decision, the Appellate Division noted that Plaintiff had counsel to represent her and that counsel took the opportunity to cross-examine witnesses. Further, the Court noted that Plaintiff was fully aware of the litigation, choosing to appear sporadically, and that she did not proffer any reason for her absences. Id. at 5. The Appellate Division found that despite the default, the matter was tried fully on the merits, following an entirely permissible and proper default. Id. at 4.

On or about November 24, 2003, Plaintiff initiated the instant action in federal court, pursuant to 42 U.S.C. §§ 1983 and 1988 against Defendants New Jersey Department of Youth and Family Services ("DYFS"), Township of Ocean, Township of Ocean Police Department, Monmouth County, Monmouth County Sheriff's Office, Monmouth County Prosecutor's Office, and various unnamed defendants. (Compl. at 2-4.)[2] The Complaint alleges violations of

---

[2]Since the commencement of the case, Plaintiff has stipulated to dismissal of Defendants Township of Ocean, Township of Ocean Police Department, Monmouth County, and Monmouth County Sheriff's Department. (Docket at 11, 21.)

4

Plaintiff's constitutional and civil rights, specifically her right to privacy and interference with her right to due process and familial integrity.  Plaintiff seeks compensatory and punitive damages for these alleged violations, as well as for the "various, unlawful, reckless, and irresponsible acts that led to the destruction of [her] family and her relationships with her minor children." (Id. at 4.)  Plaintiff's requested relief includes not only damages and attorneys' fees and costs, but also the appointment of guardians ad litem for her children; the re-opening of the cases terminating her parental rights to all six children, or alternatively restoring her parental rights; and opening and unsealing her DYFS records.  (Id. at 23.)

## III. DEFENDANTS' SUMMARY JUDGMENT MOTIONS

### A. Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and

of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).

### B. Monmouth County Prosecutor's Office Motion for Summary Judgment

Defendant Monmouth County Prosecutor's Office ("MCPO") brought a motion for summary judgment which asserts that the MCPO enjoys absolute immunity in this case as it was exercising an advocate function when it instituted legal proceedings against Plaintiff. Absolute immunity exists for those officers who perform judicial or quasi-judicial function. Imbler v. Pachtman, 424 U.S. 409, 420 (1976). Prosecutors are absolutely immune from liability for their conduct in "initiating a prosecution and presenting the State's case" insofar as that conduct is "intimately associated with the judicial phase of the criminal process." Id. at 430-32. Other officers, such as investigators, enjoy qualified immunity for their discretionary function. Malley v. Briggs, 475 U.S. 335, 340 (1986).

Two of the six counts of Plaintiff's Complaint are asserted against Defendant MCPO. Specifically, count four of malicious prosecution and count six of "state constitutional

violations." (Compl. at 21.) Plaintiff's malicious prosecution claim states that "[t]here was no probable cause for instituting criminal action against [her], since [she] had not done anything to violate the statute." (Compl. at 18.) Plaintiff further asserts that "[a]s a direct and proximate result of the defendants' actions, [she] suffered and continues to suffer serious mental anguish, psychological and emotional stress, humiliation, physical pain and suffering, some or all of which may be permanent." Plaintiff purports that despite the jury conviction, she is not precluded from maintaining that the Defendants did not have probable cause to institute the criminal proceedings against her. (Id. at 19.) Indeed, Plaintiff asserts that "[t]here was no basis in fact or law for this prosecution, and no reason in fact or justification under the statute for acting to deprive [her] of her child." (Id. at 12.)

       The essence of Plaintiff's allegations against the MCPO is that it instituted a false and malicious prosecution against her. Viewing Plaintiff's allegations in the light most favorable to her case, this Court finds that if true, the MCPO's action fall within the activities performed in the prosecutors' "quasi-judicial" roles. As such, the MCPO is entitled to absolute immunity. "The decision to initiate a prosecution is at the core of a prosecutor's judicial role." Kulvicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992) (citing Imbler, 424 U.S. at 430-31). Therefore, the MCPO "is absolutely immune when making [the] decision [to prosecute], even where [it] acts without a good faith belief that any wrongdoing has occurred." Kulvicki, 969 F.2d at 1464. Absolute immunity protects "even groundless charges." Id. Therefore, even when Plaintiff's allegations against MCPO are accepted as true, absolute immunity nonetheless shields that conduct.

       This Court is convinced that Defendant MCPO has met its burden for summary judgment,

and as such, Plaintiff must present specific facts which present issues for trial. However, Plaintiff adduces no evidence to show this Court that Defendant MCPO's actions were outside of its quasi-judicial role. Plaintiff's two paragraph response to Defendant's motion, which is offered more in support of her argument to amend her complaint, does not present any factual basis for this Court to conclude that the MCPO or its individual prosecutors would not be protected by absolute immunity. Therefore, this Court finds in favor of Defendant MCPO and grants summary judgment in its favor.

### C. DYFS's Motion for Summary Judgment

Plaintiff's Complaint asserts the following causes of action pursuant to 42 U.S.C. § 1983 against Defendant DYFS: (1) Stop and Detention without Probable Cause and False Arrest - Unlawful Seizure; (2) Excessive Force; (3) Violation of Right to Privacy and Familial Integrity;[3] (4) Malicious Prosecution. Further, Plaintiff asserts "Negligence and Malfeasance" and "Violations of Plaintiff's State Constitutional Rights." Defendant DYFS presents four arguments in support of its motion for summary judgment. Those arguments are: (1) The suit against DYFS is barred by the Eleventh Amendment of the United States Constitution; (2) DYFS is not a "person" who can be sued under 42 U.S.C. § 1983; (3) Plaintiff's claims are barred by the principles of res judicata; and (4) the Federal Court should abstain from hearing this action.[4]

---

[3]Plaintiff's Complaint does not specifically list 42 U.S.C. § 1983 under this cause of action, however, since Section 1983 provides a private right of action whenever an individual has been deprived of any constitutional or statutory federal right under the color of state law, this Court will interpret count three as brought pursuant to Section 1983.

[4]As discussed more below, the Court believes that Defendant DYFS actually meant to discuss the Rooker-Feldman Doctrine rather than argue the principles of abstention.

Plaintiff's responsive papers fail to address any of these arguments. Instead, Plaintiff's response, a cross-motion to amend the Complaint, primarily seeks to add individually named defendants to this lawsuit.

Although there may be merit in more than one of Defendant's arguments, this Court finds no reason to go beyond analysis of Eleventh Amendment immunity. Defendant DYFS argues that as an agency of the State, it is immune from suit in federal court under the Eleventh Amendment of the United States Constitution. The Amendment, which provides, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States," does not explicitly prohibit lawsuits by a State's own citizens. However, the United States Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). As such, "[t]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Board of Trustees v. Garrett, 531 U.S. 356, 363 (2001)(citing Kimel v Florida Bd. of Regents, 528 U.S. 62, 73 (2000)).

A narrow exception to this broad immunity exists under the judicial doctrine of *Ex Parte Young*, which "allows suits against States in federal court seeking prospective injunctive relief to proceed against state officials acting in the official capacities." Doe v. Div. of Youth & Family Svs., 148 F. Supp. 2d 462, 483 (D.N.J. 2001) (citing Ex Parte Young, 209 U.S. 123 (1908)). However, this narrow exception is not applicable here where only the state agency, DYFS, was named in the Complaint. The Court realizes that Plaintiff's cross-motion seeks to amend her Complaint to add two named DYFS caseworkers. However, the addition of individual

9

caseworkers will not defeat Defendant DYFS' immunity. The Court will discuss Plaintiff's motion further below, but whether or not actual named DYFS caseworkers are added to the Complaint does not change the disposition of Plaintiff's case against DYFS as a state agency. Two additional, and just as limited, exceptions exists: "(1) abrogation by Act of Congress; and (2) waiver by state consent to suit." M.A. v. State Operated Sch. Dist.of Newark, 344 F.3d 335, 345 (3d Cir. 2003). Neither of these exceptions are applicable here. Therefore, the Court concludes that the Plaintiff's Section 1983 claims against DYFS are barred by the Eleventh Amendment and accordingly Defendant DYFS's summary judgment motion is granted as to those claims arising under Section 1983, specifically, counts one, two, three and four.

With the underlying federal claims dismissed, Plaintiff no longer maintains a cause of action which independently establishes federal subject matter jurisdiction. Therefore, this Court has discretion to dismiss any of Plaintiff's claims which rely upon supplemental jurisdiction. 28 U.S.C. §1367(c). The Court concludes that dismissal of Plaintiff's state law claims is appropriate and will decline to exercise supplemental jurisdiction over the remaining state claims, specifically counts five and six. These claims will be dismissed without prejudice.

## III. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

### A. Legal Standard

Leave to amend pleadings is ordinarily "freely given when justice requires." Fed. R. Civ. P. 15(a). The determination of a motion to amend, however, falls within the discretion of the trial court and the court may "deny such leave when the amendment would be futile." Foman v. Davis, 371 U.S. 178, 182 (1962). The articulated standard provided by the United States

Supreme Court states:

> In the absence of any apparent or declared reason – such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the amendment, futility of amendment ... the leave sought should, as the rules require, be freely given.

Id. In addition, federal courts will not condone filing of vexatious litigation, even where the legal and factual grounds are not of a frivolous nature. Aetna Life Ins. Co. v. Alla Medical Svs., Inc., 855 F.2d 1470 (9th Cir. 1988). In short, parties to a litigation may not file motions to amend "primarily to cause harassment or delay." Bygott v. Leaseway Transp. Corp.,637 F. Supp. 1433, 1447 (E.D. Pa. 1986).

Delay alone is not a sufficient reason to deny leave to amend, but the Court has discretion to determine if that delay is undue, motivated by bad faith, or prejudicial. Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001). Delay may be considered undue when the movant has had previous opportunity to amend the complaint, and prejudice to the non-moving party focuses on whether the defendants will face hardship if the amendment is permitted. Id. Further, the Court may refuse to allow an amendment complaint that fails to state a cause of action. Id. The Court's interest in judicial economy prevents allowing an amendment which would place an unwarranted burden on the Court.

### B. Plaintiff's Motion

In the present case, the Court finds that Plaintiff's motion to amend comes at a stage of this litigation that is unduly late. Plaintiff had opportunity to amend her Complaint, but chose not to do so until eighteen months after she initiated this litigation, approximately four months after directed to do so by the Magistrate Judge, and after – and in response to – Defendants'

11

motions for summary judgment. Indeed, Plaintiff's responsive papers to those dispositive motions is a cross-motion to amend the Complaint, which hardly seeks to respond to the movants' arguments for summary judgment. Further, Plaintiff proposes to add three named defendants against whom there appears to be no cause of action upon which relief can be granted. This Court refuses to drag out this litigation needlessly by the addition of defendants who will only be dismissed in due course for failure to state a claim or for a lack of subject matter jurisdiction.

The Complaint in this matter was filed on or about November 24, 2003. On or about March 15, 2005, approximately sixteen months later and in response to Defendants' Motion for Summary Judgment, Plaintiff filed a Motion to Amend the Complaint. Between the commencement of this action and Plaintiff's instant Motion, Plaintiff has stipulated to the dismissal of at least four previously named Defendants (docket entries #11 and #21), and the remaining parties have participated in various proceedings before Judge Hughes, including scheduling and settlement conferences. On or about October 4, 2004, Judge Hughes issued a Case Management Order in which he ordered certain depositions be completed by October 30, 2004, and set a status conference for November 15, 2004. Further, the Order provided that "[i]f the parties are unable to resolve the matter, the plaintiff will have to provide an amended Complaint; the Court will also entertain specific additional discovery and set a schedule for dispositive motions to be filed." (Case Mgmt Order, Oct. 4, 2004, at ¶ 3, see docket entry # 26.)

The parties did indeed participate in a conference with Judge Hughes on November 15, 2004. The matter did not settle and as indicated in the previous order, on December 7, 2004, Judge Hughes issued an Order setting deadlines of December 15, 2004, for depositions and

January 28, 2005, as the deadline for dispositive motion practice. (Docket entry # 29.)  Plaintiff did not choose to amend her Complaint in a timely manner as ordered by the Court in the October 4 Order, nor did she request an extension during the subsequent conferences with Judge Hughes.  It was not until Defendants filed a Motion for Summary Judgment, in keeping with the Court's Order, that Plaintiff sought leave to amend her Complaint.  Defendants do not contend that they would suffer prejudice if leave were granted to amend, but they argue that the leave should be denied because amendment would be futile. The Court agrees.

As an initial matter, the Court notes that Plaintiff failed to comply with Local Rule 7.1(e)(2) which requires that a motion for leave to file an amended complaint be accompanied by a copy of the proposed amendment.  The need for this proposed amendment is more than just procedural as it gives both the Court and the adversary the opportunity to evaluate the merits of the motion.  Instead, in the present case, both the Defendants and the Court must anticipate Plaintiff's amendments.  Indeed, Defendants have done exactly that in their responsive papers.  Despite precedent which would allow this Court to deny Plaintiff's motion solely for failure to comply with this rule, the Court instead points to this defect to encourage Plaintiff to always consult the Court's Local Rules.  See Panna v. Firstrust Sav. Bank, 760 F. Supp. 432, 435, n.4 (D.N.J. 1991); see also Lake v. Arnold, 232 F.3d 360, 374 (3d Cir. 2000)("failure to provide a draft amended complaint would be an adequate basis on which the court could deny the plaintiff's request.")

Plaintiff's brief in support of her motion indicates that the amendment she seeks is the addition of "individuals identified in discovery as having made the decisions to take custody of [her] child an to institute the criminal prosecution against [her]."  (Pl.'s Brief at 12.)  These

13

individuals are two DYFS caseworkers and an Assistant Monmouth County Prosecutor. (Id.) Seeking relief under 42 U.S.C. § 1983, Plaintiff argues that these individuals violated her "right of familial integrity and her "right of freedom from malicious prosecution." (Id. at 13.) Defendants assert that Plaintiff's Complaint, as amended, would fail to state a claim and as such, urges the Court to exercise its discretion to deny the Motion because amendment would be futile.

Keeping in mind the liberal standard governing amendment of pleadings, this Court is still unconvinced that Plaintiff should be permitted to amend her Complaint at this stage of the litigation. Even if Plaintiff's request was not so untimely, the proposed claims against the Monmouth County Assistant Prosecutor appear to be no different than the claims against the MCPO that this Court has just dismissed under absolute immunity. Plaintiff's brief offers no facts or argument that convince this Court that her claim against this assistant prosecutor asserts conduct not "intimately associated with the judicial phase of the criminal process." Michaels v. New Jersey, 50 F. Supp. 2d 353, 359 (D.N.J. 1999) (quoting Imbler, 424 U.S. at 430-31).

With regards to the two DYFS caseworkers, the Court is similarly unpersuaded that Plaintiff proposes a claim upon which relief can be granted. Although not clearly articulated, Plaintiff's brief appears to suggest that the claims against these caseworkers would include allegations that they did not have sufficient cause to remove her child and that by removing her child without probable cause, and ultimately terminating her parental rights, Plaintiff was denied her right to family integrity. (Pl.'s Opp. At 13-15.) Plaintiff asserts that the actions of the DYFS caseworkers "were arbitrary" and "reached a level of arbitrariness that ... shocked the conscience." (Id. at 15.) Plaintiff cites to Croft v. Westmoreland County Children and Youth Services, 103 F.3d 1123 (3d Cir. 1997) and Miller v. City of Philadelphia, 174 F.3d 368 (3d Cir.

1999) in support of her motion. However, Plaintiff fails to recognize a distinguishing fact between these cases and her own. In both <u>Croft</u> and <u>Miller</u>, there were no underlying state lawsuits at issue. In both cases, the parents retained their parental rights and there was no state litigation where the issues could have been raised. In the instant case, the claims and allegations made by Plaintiff appear to have already been addressed by the state court matter and as such this Court has no jurisdiction over Plaintiff's proposed claims.

Subject matter jurisdiction is a threshold issue concerning the very power of the Court to entertain this action. The Court has a continuing obligation to address the issue, even *sua sponte*, if there is cause to believe the Court lacks such jurisdiction. <u>Desi's Pizza, Inc. v. City of Wilkes-Barre</u>, 321 F.3d 411, 420 (3d Cir. 2001) (citations omitted). The Rooker-Feldman Doctrine bars a state court losing party from seeking appellate review in the federal courts and circumscribes the appellate jurisdiction of the lower federal courts. The Doctrine is based on "the well settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." <u>Parkview Assocs. Pshp. v. City of Lebanon</u>, 225 F.3d 321, 324 (3d Cir. 2000). Rooker-Feldman bars a federal proceeding when "entertaining the federal court claim would be the equivalent of an appellate review" of the state judgment. <u>FOCUS v. Alleghany County Court of Common Pleas</u>, 75 F.3d 834, 840 (3d Cir. 1996). In short, "Rooker-Feldman applies ... when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." <u>Id.</u> In application, the Court must decline to hear a cause of action "if the claim was 'actually litigated' in state court prior to the filing of the federal action ... or if the claim is inextricably intertwined with [the] state

15

adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." Desi's Pizza, 321 F.3d at 419 (citations omitted).

Therefore, to the extent that Plaintiff seeks for this Court to review the state court matter which terminated her parental rights of AKD, any matters which were either actually litigated or are inextricably intertwined with the state court matter cannot be reviewed again here. Indeed, part of Plaintiff's requested relief includes reinstatement of her parental rights, which simply stated asks this Court to review and reverse the state court decision.

The Court is convinced that Plaintiff not only had the opportunity to bring her claims in her state court action, but indeed she is precluded from bringing them now in federal court. Plaintiff's parental rights were terminated in a state court action, which was later affirmed by the Appellate Division. The Appellate Judge concluded that Plaintiff's argument that DYFS failed to establish the statutory factors for termination of her parental rights by clear and convincing evidence was without merit. Plaintiff had the opportunity to challenge the actions of the DYFS caseworkers at her initial trial. A challenge to the probable cause to remove her children would have been an appropriate argument at that proceeding or on appeal. Although Defendant DYFS's opposition brief provides supporting authority for the caseworkers actions, the Court will not delve into the merits of this possible action. This Court is convinced that Plaintiff has failed to state a cause of action against the DYFS caseworkers which would survive a challenge to subject matter jurisdiction under the Rooker-Feldman Doctrine. The allegations proposed against the DYFS caseworkers are issues which were either litigated in Plaintiff's state court trial and subsequent appeal, or were matters which are so inextricably intertwined with the state court matter that this Court must decline to consider them.

Therefore, Plaintiff's Motion to Amend the Complaint is denied for undue delay and for failure to state causes of action upon which relief could be granted.

## IV. REMAINING CLAIMS

Considering the discussion above, this Court concludes that both Defendants MCPO and DYFS should be terminated as Defendants in this case. Indeed, considering the previous stipulations of dismissal by Plaintiff, all causes of action against the Defendants in this matter arising from the initiating Complaint have now been dismissed and it appears this case is postured for closing.

On or about January 20, 2004, Defendant MCPO filed its answer and a cross-claim against all Defendants for contribution and indemnification of any resulting judgment (docket item #3), and on or about February 23, 2004, Defendant County of Monmouth filed its Answer with similar cross-claims (docket item #9). With the dismissal of all claims giving rise to federal subject matter jurisdiction in this case, it appears that the Defendants' cross-claims have no independent federal subject matter jurisdiction. As such, this Court will exercise its discretion to dismiss these claims without prejudice, declining to exercise supplemental jurisdiction over these state law cross-claims. See 28 U.S.C. §1367(c).

As previously discussed, the Court also concludes that any claims brought by Plaintiff under state torts and constitutional law, specifically counts five and six, will be dismissed without prejudice for a lack of independent federal subject matter jurisdiction. The causes of action asserted in this portion of Plaintiff's Complaint rely entirely on state law and the Court sees no reason why it would be a more appropriate forum that the state court venue. The Court

discussed these claims as to Defendant DYFS earlier, but it appearing unclear which other Defendants Plaintiff may have intended to include, these claims will be dismissed without prejudice against all remaining parties.

## V. CONCLUSION

For the reasons set forth above and for good cause shown, the Court grants Defendant Monmouth County Prosecutor Office's Motion for Summary Judgment, grants Defendant Division of Youth and Family Services' Motion for Summary Judgment and denies Plaintiff Anastasia's Motion to Amend the Complaint.   The Court further concludes that all original causes of action in this matter have been dismissed and any pending cross-claims lack independent subject matter jurisdiction.  The Clerk of the Court is directed to close this case.

An appropriate form of order will be filed herewith.

Date:   July 5, 2005

_____/s/_____
Stanley R. Chesler, U.S.D.J.